Estate of Adam Brown v. Timothy Thomas Thank you Judge Posner, and may it please the court, Kenneth Chesbrough on behalf of the Estate of Adam Brown appealing the summary judgment in this excessive force case. Our appeal focuses on what we contend are fundamental defects in the initial motion brought by the defendants below, specifically their brief in support of summary judgment. That brief made one, and only one, narrow Fourth Amendment argument. In Appendix 85-89, the argument was very simple, that Adam Brown was only seized at the moment that Deputy Secor shot him. At the moment that Adam was shot, Adam was pointing a gun at Secor. Therefore, the seizure was reasonable, and under the 1992 Carter case, defendants argued, you don't look at the pre-seizure circumstances. At the moment of shooting, the seizure was reasonable, and that's the end of the case. But isn't the Fourth Amendment inquiry an objective one? And isn't the problem here that the occupants of the residence thought they were being robbed based on their own prior bad experiences, rather than based on any actions that were taken by the officers who were executing the warrant? I agree that the Fourth Amendment issue, in terms of the objective reasonableness of either the search or the seizure, is governed by what reasonable officers would perceive in the situation. However, the perceptions of those inside are important to fully understand whether, as in the SLED case from 1996, this is a situation in which the occupants had no reason to know that police officers were coming in, and where they felt a need to arm themselves. In the SLED case, though, there was a disputed fact as to whether the officers had announced their presence in purpose, right? Yes. Here, that fact is not in dispute. That's correct. Now, there is a dispute as to whether your client and his associates heard it. No, to be fair, I believe at least one witness inside heard the knocking and announce. We're not contesting that. The key here, however, is that there were audio cues that these could be police, purported to be police. The problem here is that under county policy, the search was led by an undercover officer in street clothes, actually two officers in street clothes, and the lead officer, Deputy Secor, was dressed to resemble a violent drug criminal in his undercover getup. Ray was in total darkness, and as Secor said in his deposition, which is at appendix 52 to 53, he admitted he looked like a street thug, and he admitted that he was directly facing Adam Brown when Adam Brown came to the window, two feet away. The minute that Adam Brown saw Secor, he ran, and he yelled, and this is undisputed, he yelled, what the expetive, we're getting robbed again. So we know that upon seeing Secor, who looked like a drug criminal, because they had not had the search led by a uniformed officer. So the rule should be that only uniformed officers should make the initial entry on a search? Well, that is apparently according to our expert. And it should only be done in daylight? Our expert says that it's an objective balancing analysis, as Judge Rubner correctly notes. The argument is that when you have a small stakes case involving misdemeanor theft, then you should think twice before you send a paramilitary team in total darkness, led by someone who looks like a drug criminal, who people naturally assume was a criminal trying to break in. But some of the officers were either in uniform or wearing identification, and they waited for the occupants to come to the door. In other words, they didn't just break in. We can see that they knocked and announced, and in about two seconds, Adam and the teenager with them, Stone Moreau, came to the door. They both immediately looked out and saw Secor, who looked like a criminal trying to break in. And they both concluded that this is a break in. Adam yelled, we're getting broken into. Stone said, get the shotty. And so Adam Brown went to run to get a shotgun, which he had for self-protection. And so basically, the point of this proceeding, of course, is not to argue whether or not, in fact, a jury would find objective unreasonableness, but to basically say that the district court went into this whole morass of facts before the defendants even met their Rule 56C burden to show in the initial summary judgment motion. When the judge issued his opinion, had your expert's report been filed already? When he issued the opinion, it had been filed. Pardon? Yes, it had, on September 12th. Was it directed to his attention? Well, it was filed a record. He didn't mention it in his opinion, did he? No, he didn't. It was filed about a month before the defendants filed the reply brief. The reply brief was the first brief in which they actually argued the pre-seizure circumstances. So they mentioned it, and did they mention the expert report? No, they didn't. And that was the first time. Did they mention the expert report? No, the defendants never mentioned it. And it wasn't mentioned in your brief either. Well, because our brief was filed before they argued pre-seizure circumstances. That is, we had no notice. That's really our fundamental complaint. Their opening motion only argued that at the moment of shooting it was justified. No reference to pre-seizure circumstances. No reference to the search theory that we had in the case. Paragraphs 5 and 33 of the complaint specifically allege that the county policy authorized the search of Adam Brown's apartment, quote, in an unreasonably dangerous and threatening manner, given the nature of the warrant. And their motion recited that at Appendix 84, noted that we had a search claim, and then made no argument about it. And the problem is, under the Carmichael decision in 2010, which we cite in the blue brief of 28 Note 7, this court held in a very similar case that where there was a search, there was a passenger in an auto search, and he was, as the side light to the case, he claimed he'd been subjected to an impromptu mini strip search. And the problem is, the defendant in that case moved for summary judgment on all claims, as in this case, but made no argument about that search. Nonetheless, the district court, as in this case, ran a summary judgment on the entire case. And in Carmichael, this court held, quote, the defendants, the moving party, and the summary judgment motion never fulfilled the obligation of setting forth the basic facts and law, which, in their view, warranted summary judgment on this claim, the search claim. That's at 605F2nd and 460. So our fundamental objection is we never had notice that we had any obligation to put forward all our evidence relating to the pre-seizure circumstances. Well, I do wonder what an expert report would add to the question as to whether the officer's actions were objectively reasonable that a court can't assess on its own, you know, as a question of law. Well, I recommend that you look in the appendix, the report, supplemental appendix, I'm sorry, the appendix itself, at 108111. There we have Dr. Gant, who's a quarter century experience, Birmingham Police Department, and Ph.D. in criminal justice. He lays out how the police here violated all the standard protocols for police searches, doing it at night, doing it with an undercover officer who's mistaken for a prisoner, doing it with mass confusion, everyone yelling, using street language, typical people breaking into homes. It sounds like a usual raid to me. Right. And I understand best practices and critique of their practices, but I don't see how that gets to whether this was a constitutional violation. Well, if this is admissible, and, of course, we haven't tested that because it was never referenced by the defense, but if it's admissible then we have a qualified expert concluding, and he makes the final conclusion of 103 of the appendix, the plan and actual force used to execute a search warrant was improper. That is, we do have experts that their conclusions can be credited if they're admissible. Of course, we don't know that yet. It was unreasonable under the totality of circumstances the officers faced on the scene. That seems to be a different question than whether it was improper. But from his retrospective view. Well, clearly the defendants think that they have an answer to the expert, but we don't know because it was never briefed. I notice that I'm cutting into my rebuttal time. I'd like to save some if possible. Sure. Thank you very much. Thank you, Mr. Chief. Mr. Hall. Good morning, Your Honors, and may it please the Court. While it may seem rudimentary, I think in this case it's important to begin with the text of the complaint. The allegations in the complaint in this case. I don't understand why the judge didn't discuss the expert's report. Well, the reason the judge didn't address it, Judge Posner, is that the expert report was e-filed, but it was never cited, referred to in the plaintiff's response brief. It was not submitted through an affidavit. You mentioned that, didn't you? The expert report was never properly before the district court. Not properly before the district court? I don't understand that. Correct, Your Honor. It wasn't. There was no affidavit with it. It was submitted as a pure Rule 26 disclosure, electronically filed with the court, but not through an affidavit. Well, I don't understand. I mean, it's perfectly clear what this is about. This is the Monell issue. He's saying that what the police did here, not shooting the fellow in his pointy shotgun, that was unavoidable, but that this goofy search they conducted with this guy dressed like a gang member was unreasonable. I don't understand how the judge can ignore something like this. What's it for? Report of expert witness, just for fun or what? It's in support of the Monell claim. That's obvious. I found it very impressive. Is there something wrong with the expert report? You don't say anything about it. I do, Your Honor, in our brief. There's multiple issues. First, for the report to be properly considered by the district court. I'm not talking about that. I want your criticisms of the report, the contents of it. Is he wrong? Is he wrong? Yes. What do you have this gang figure, this guy dressed like a gangster, leading the charge? What's that about? First of all, Your Honor, he had a badge outside of his hoodie. What's the badge? Now, what was the badge? It was a standard brass police badge. How big was it? Standard badge. This is night. Is it one of these where they have a big sign, police, or is it just a badge? No, Your Honor, the first one in, Deputy Secor, was wearing a hoodie and a badge out around his neck. What does the badge look like? How big is it? It's a brass standard police badge. Well, that's not the right way to advertise you're being a police officer at night when you look like a gangster from the way you're dressed. In the totality, Your Honor, first of all, there was a very loud and clear knock and announce. What does that mean? Look, apparently there are these break-ins by gangsters who shout police, right? And these people apparently have had previous experience with that. Sure, and if that's the case, Your Honor, I'd remind the court first that we judge this from the perspective of a reasonable officer at the scene and not the occupants of the home. Well, this expert with his Ph.D. and his 24 years as a police officer and all his respondents have a very lucid and comprehensive report. Why doesn't that get any consideration by the judge? Does the judge not know about it? The other point I was going to make, Your Honor, about Deputy Secor coming in is that this mistaken identity theory is opening the door to a slippery slope. If there are criminals that are out there that are knocking on people's doors... Why is this guy leading the charge when he's dressed like a criminal? What is that about? It sounds so stupid. Because he was the one that conducted the surveillance. This is a duplex, Your Honor. There's no reason for him to be the one who's leading the break-in. He was the one that knew which door to hit. Which door to hit? This was a duplex with multiple entrances. Well, he can't tell someone? I mean, either he shaves all his beard and all his stuff, or he tells the person, you go, and that's the door, right? I mean, I think we're now getting into the realm of the second-guessing. This is a very responsible expert report. This is a very experienced person. It's comprehensive. I don't understand why the judge doesn't pay the slightest bit of attention to it. Because it wasn't before the court on summary judgment. It was before the court. It was in the record. Even if it was, it wasn't authenticated in the record. It's not authenticated. It's just a report that's submitted. William T. Gout? William is fake or something? This court has required that for purposes of summary judgment, there has to be a supporting affidavit. And there are briefs we cite to a litany of cases where Mr. Gout has been daubered out. There is one thing that I would clear up in the record. I did obtain the deposition of Mr. Gout. Excuse me? I did obtain his deposition, and it was a conscious decision not to make a daubered motion, because his report wasn't in front of the district court. It wasn't relied on in any respect by the plaintiff. Had it been, had they actually submitted an affidavit in support of summary judgment, including his report, we certainly would have filed a daubered motion, but it wasn't before the court. And that's why Judge Griesbach didn't consider it, and that's why this court should disregard it. But I think even moving beyond that, even if the court does consider what's in the narrative of that report, this is not the type of case where an expert is required. We're evaluating the objective reasonableness of SECOR's conduct in this case. I don't understand you. What's that? I'm sorry, Your Honor? I don't understand you when you say an expert is not. Well, in this case, Your Honor, Deputy SECOR looked down the barrel of a gun. What do we know about police tactics? We're just judges. You know about what's reasonable and what's not. No, I don't. I've never conducted a search. At last, the truth. What do judges know about police searches? Quite a bit. No, they don't. And you've seen many cases like this before. This isn't the first case like this. No, I've never seen a case in which a police officer with a little badge, dressed like a gangster, leads a search at night into a house of people who've had experience with gangsters pretending to be cops and breaking down their door. I think the other thing I would also submit to the Court as well is that this is at 6.10 p.m. in Green Bay. This is not like the Deering v. Wright case where we're waking somebody up at 12.45 a.m. This is at 6.10 in the evening. The officers conducted surveillance, made sure that the people were awake, they were playing video games. Under the Federal Rules of Criminal Procedure, a 6.10 p.m. search is considered a daytime search under Rule 41. So in the totality, when you consider the announcements of the officers, which were undisputably made, which were undisputably even heard by a neighbor who came out of her own house. You're saying a search at night can be deemed a search during the day? I'm saying that it's not a search at night. I'm saying it's not a search at night. Even though it's dark. It's 6.10 p.m. It's after dusk in Green Bay. Under the Federal Rules, that is considered a daytime search. What about the argument that the constitutionality of the search itself was not before the court or was not raised by your summary judge? Sure, and that's what I was actually going to begin my argument with, is that this case was brought as an unreasonable seizure claim based on the use of deadly force against Mr. Brown. But there is a Monell claim, which is all I'm talking about. Sure, but the Monell claim doesn't allege that there's an unconstitutional policy with regard to the search. They're alleging that the use of deadly force was unconstitutional and that it was caused by both Deputy Seclor's action and the policies of the company. But again, you're dismissing as inadmissible the expert report, which is obviously aimed at a Monell theory, which isn't about the excessive force. It's about how these people, how the police conducted the search. Sure, and I'd also, if there's not a, and I think the district court also hit on this as well, if there's not an underlying constitutional deprivation, there is no Monell claim. And in this case, the court found as a matter of law that... The Monell claim here is this fellow, once he, with his shotgun and everything, he's going to be killed. There's no way around that. But the notion is that none of this would have happened if the police had followed Gault's notion of what is a reasonable way of searching. I don't think we can ever know that, Your Honor. I mean, it is entirely possible that... We can never know what? That this wouldn't have happened if the police would have followed all of Gault's suggestions. Well, you never know that. You never know that. That's the point. John, or I'm sorry, Adam Brown... But are you saying that there are never cases where you can have a successful Monell claim because police haven't been trained, they don't know how to fire a gun, they don't... Of course I'm not saying that. But if there's no underlying... Fine, if you are saying that. But if there's no underlying... Because if we believe Gault, the judge believed Gault, you'd say this would not have happened if it hadn't been for this irresponsible search plan. But if there's no underlying constitutional deprivation, then there can be no Monell. That's the constitutional deprivation. Someone is killed because, in part because, of unreasonable police conduct. And what the district court held and what we would ask the court to affirm here is that Deputy Secor's conduct was objectively reasonable at every step of the way, in the totality of the sentence.  I don't understand why the judge didn't realize that Gault had raised a serious issue which required a discussion. Your Honor, all I can suggest is that Gault's report was never properly put before the court. Had an affidavit been submitted with Gault's report, I suspect the court would have considered it. Did the judge know there was such a report or he just didn't know it? It was e-filed. Presumably the court knew it was there, but for purposes of the summary judgment materials, it wasn't part of the... So he thought it had been waived and it wasn't being used? Well, it wasn't part of the record and summary judgment. There was no affidavit. It wasn't relied on by the plaintiffs, and I think the district court correctly ignored it, frankly. Okay. Thank you, Your Honor. Thank you very much, Mr. Gault. Mr. Cheesbrough? Thank you, Your Honor. Just four quick points, two on the expert testimony. The first is that the defendants had every opportunity to depose the expert before they filed for summary judgment. As you'll see from the Appendix 12 to 16, originally we were supposed to designate our expert by July 1, 2013. They agreed to delay that until September 20th, several weeks after the motion was due. So they knew going in here they wouldn't be able to address our expert in the summary judgment motion. The second thing is that in terms of it obviously not being in affidavit form, what's critical there is that in our reply brief at footnote 3... They're not going to depose him before the report is submitted, are they? Excuse me? They are not going to depose him before the report is submitted. That would be kind of foolish. What I'm saying is they would have had the report on July 1 and had been able to depose him before summary judgment, which is how you're supposed to do it if you want to include the expert testimony in your summary judgment motion. So they're the ones that put themselves in the position... If the defense would want to, you could submit an affidavit from that. Well, the problem is the burden is on them, Atticus under Rule 56C to meet the initial burden to show that we can't prove our case by deposing our witnesses. And then finally... I'm not sure that deposing the witnesses is where you get that. Well, Justice White's concurring opinion, which is controlling in the Celtics case and subsequent precedent from this circuit, says that the defendant in moving for summary judgment needs to depose the witnesses the plaintiff would call in order to show the plaintiff won't be able to prove the case. That's the whole point of a Rule 56C burden. Now, as to the expert affidavit, footnote 3 of our reply brief cites Atticus as saying specifically that there is no allegation to put the testimony in admissible form unless and until the defendant first meets the Rule 56C burden. And then the last two points. On the star, the guy who looked like a street thug who was leading the search, expert got at appendix 108 to 109... I'm sorry, expert got at appendix 109 says it was a mostly blue star, which is essentially invisible in the night looking out from the residence. And the last point is that expert got also focused on the absence of the uniformed officer at the lead at 108 to 109 and 115. What he said at 115 is that there was no reason for the dynamic entry to be led by two plainclothes officers when there were at least three other officers fully dressed in police uniforms available. So that really points to the objective reasonableness of having this paramilitary raid at night led by people who look like thugs. I understand what you were saying about Gault and about September 20th and all that stuff. This is your best witness, your best evidence. Why on earth don't you get it before the judge? Why don't you tell the judge, we have this Monell claim, we have this great expert witness. Now he hasn't been deposed yet because of delay and this and that. But we either want a chance to depose him or give the opponent a chance to depose him or we want you to look at this or something. He apparently, or at least according to Mr. Hall, the judge may simply have said, well, this isn't in the records so I'm not going to pay any attention to it. Well, you have a fair point that it might have been nice to call this to the district court's attention. However, I don't think it was required by the rules because... That's ridiculous. You have your best piece of evidence and you don't bother to thrust it in the judge's face. I don't understand that. Excuse me, Your Honor. The problem is that we were not unnoticed that the defendants were arguing... What difference does it make? It's your best evidence. You have a Monell claim, you have this expert and you don't bother to apprise the judge of it. Well, again, I think I have the... His report is dated September the 6th. The summary judgment motion had been filed 3 days earlier, right? Actually, the report was filed on September the 12th. Right, but it's not even dated until September the 6th. Right, right. So this is something obviously the defendants couldn't consider because they had agreed to allow the expert report to be filed after the summary judgment motion. But it wasn't finished in July. Well, it would have been had the parties not stipulated to the extension. So it's the defense's fault for allowing you to submit it later. No, I think if the defendant wants to address the substance of the expert testimony in its summary judgment motion, it needs to put off the filing of the summary judgment motion so it can make a complete record. And if you want to use it, you have to submit it in an admissible form to oppose summary judgment. You can't just put it in the court record. You can't just file it. Well, we're not saying that's what we did here. It was filed in a timely fashion under the scheduling order. The point is that we had no obligation under Atticus to put it in an admissible form unless and until they met their burden under Rule 362. It's so ridiculous. This is so ridiculous. You conceal from the judge your best evidence. That can't make any sense at all. Well, the evidence would only have been relevant to the claim on summary judgment that at the moment of seizure it was reasonable. We weren't disputing that, and therefore it wasn't relevant to the motion. But you had a Monell claim, and it rested entirely on Gault. So why didn't you tell the judge? None of this stuff, the killing of Brown, none of this would have occurred if it hadn't been for this irresponsible police search plan, which we're going to show is unconstitutional. It violates the Fourth Amendment because it's unreasonable. It's simple. It would have been helpful after they finally argued pre-seizure circumstances in their October 17th reply brief. It would have been helpful had we filed it then. However, under the local rules of the Eastern District of Wisconsin, we're not allowed to file survey reply briefs, unlike, for example, the Indiana Southern District, and there was no oral argument. Therefore, we had no right of advocacy to the court. I don't understand. You just ask the judge. He's a reasonable person. You tell the judge, I have this evidence, hasn't gotten in yet, this and that, so give us a little extra time. Even apart from the extra affidavit, we do have the argument that in full respect, summarized in the gray brief at 21 to 22, the district court improperly weighed conflicting evidence by saying that Adam knew or should have known that these were pleas, that the officers supposedly discussed the level of force to use in the search, that this was dinner hours, so it was reasonable as a matter of law, and that Adam supposedly saw the officers behind the two plainclothes officers. So we have many grounds for summary judgment, so very similar to the Miller v. Gonzalez case recently decided by this court, to show that there's quite a bit of contesting evidence that is contrary to the findings made by the district court, even ignoring the expert testimony. But we do contend that in general, the cleanest way of deciding this case is to hold that the initial motion of summary judgment at 85 to 89 only argued pre-seizure circumstances, I'm sorry, only argued the moment of seizure, didn't make any argument about pre-seizure circumstances, and therefore none of the evidence that we're discussing here today should have been considered by the district court, unless until the district court were to give notice that the plaintiff was required to come forth with all the evidence on the claim regarding pre-seizure circumstances. I don't want to intrude overmuch. Thank you very much. Okay, well thank you to both counsel. Next case.